# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**TERRY LISA BEAUDRY,**

           **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:09-cv-579-Orl-22DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

           **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for social security disability benefits. For the reasons set forth herein, it is respectfully **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

## *I. BACKGROUND*

### A.    Procedural History

Plaintiff filed for a period of disability, disability benefits, and SSI benefits on June 20, 2006. R. 162-68. She alleged an onset of disability on December 1, 2004, due to lower back pain and an affective disorder. R. 72, 74, 76, 162, 166. Her application was denied initially and upon reconsideration. R. 70-77, 88-93, 96-100. Plaintiff requested a hearing, which was held on May 20, 2008, before Administrative Law Judge JoAnn L. Anderson (hereinafter referred to as "ALJ"). R. 21-69. In a decision dated October 2, 2008, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 10-20. Plaintiff timely filed a Request for Review of the ALJ's

decision. R. 5. The Appeals Council denied Plaintiff's request on February 26, 2009. R. 1. Plaintiff filed this action for judicial review on April 1, 2009. Doc. No. 1.

### B. Medical History and Findings Summary

Plaintiff was born December 14, 1960; Plaintiff was forty-seven years old at the time of the May 20, 2008, hearing. R. 29. She has a GED and two years of vocational training in food science technology, and past relevant work as a laboratory tester. R. 162, 174-75.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of lower back pain and/or back disorder and an affective disorder. R. 72, 74, 76. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from L5-S1 disc herniation with right radiculopathy, which was a "severe" medically determinable impairment, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 12, 15. The ALJ also determined that Plaintiff's affective disorder was not severe[1]. R. 12. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform the full range of light work. R. 15. In making this determination, the ALJ found that Plaintiff's allegations regarding her limitations were not totally credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons set forth in the body of the decision. R. 16. Based upon Plaintiff's RFC, the ALJ determined that she could perform her past relevant work. R. 18. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and concluded that Plaintiff could perform work existing in significant numbers in the national economy. R. 19. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 19.

---

[1] Plaintiff does not challenge this finding.

Plaintiff now asserts three points of error. First, she argues that the ALJ erred by failing to apply the correct legal standards to Dr. Bonnet's expert medical opinion. Second, she asserts that the ALJ erred by improperly applying the pain standard and evaluating Plaintiff's credibility. Third, Plaintiff argues the appropriate remedy is reversal for an award of benefits. For the reasons that follow, it is respectfully **RECOMMENDED** that the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. § § 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

### *III. ISSUES AND ANALYSIS*

**A.     Failure to discuss treating physician's report**

Plaintiff contends that the ALJ erred in failing to state the weight she gave to the opinion of one of Plaintiff's treating physicians, Dr. Bonnet. Plaintiff contends that the ALJ "completely overlooked this important piece of evidence." The Commissioner argues that the ALJ's failure to include Dr. Bonnet's opinion was harmless error because it was not a "treating physician's" and because assessment was only for a temporary period.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d),

416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff was treated by Dr. Bonnet, of the Roya Medical Center, from December 7, 2004 until May 12, 2005. R. 396-412. He opined that Plaintiff could only stand/walk one to two hours, sit two to four hours, and was "unable to work" as a result of back problems. R. 78. This opinion is contained in a one-page "Big Lots, Inc. Disability and Medical Release Form" completed on December 7, 2004. In the form, Dr. Bonnet indicated that he would reassess Plaintiff's level of functioning on January 7, 2005. R. 78.

The Commissioner contends that Dr. Bonnet's opinion does not qualify as a "treating physician's" opinion because Dr. Bonnet appears to have treated Plaintiff on only one occasion prior to completing the assessment form (R. 78), and because Dr. Bonnet did not have an ongoing treating relationship with Plaintiff at the time of the assessment, his opinion is not entitled to any special deference.

On its face, Dr. Bonnet's opinion of Plaintiff's limitations on the Big Lots, Inc. Disability and Medical Release Form only applied for a temporary period, until January 7, 2005[2]. R. 78. Dr. Bonnet's treatment records for Plaintiff consistently indicated improvement in Plaintiff's condition. R. 399, 401-03. A treatment note dated February 3, 2005 stated that Plaintiff could return to work

---

[2] Plaintiff's counsel argued at the hearing that Dr. Bonnet's "1/7/04" was a typo and should have been 2005, which appears correct based on the treatment records beginning in December 2004.

with full duty work. R. 400. Dr. Bonnet's opinion, rendered in the context of workers compensation, established that Plaintiff was unable to work for a period of approximately three months immediately following her injury, from December 2004 to February 2005. As the Commissioner argues, Dr. Bonnet's opinion is consistent with the ALJ's ultimate finding that there is no "treating source opinion evidence which establishes that [Plaintiff] has been unable to work, or has been limited in her ability to work for any *consecutive twelve month period* since December 1, 2004," Plaintiff's alleged onset date. Moreover, Plaintiff conceded that her back had improved in March 2007, which is why she filed for the closed period of disability. R. 274. She asserted her back problems returned when she reinjured her back cleaning carpets. R. 48.

Under the Social Security regulations, Plaintiff must prove the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (emphasis added); 20 C.F.R. § 416.905(a)(defining disability); 20 C.F.R. § 416.909 (impairment must be expected to result in death or last for a continuous period of at least twelve months). Dr. Bonnet's opinion was temporary and provisional until Plaintiff returned to the next treatment, and he released her to full duty within three months; thus, the ALJ's failure to discuss it, and reliance on other evidence in the record, was supported by substantial evidence.

### B. Pain and credibility.

Plaintiff asserts that the ALJ erred in evaluating her pain due to a back impairment. She also argues that the ALJ erred by finding Plaintiff capable of light work. R. 16. She contends that medical evidence and her testimony demonstrate her credibility and that the ALJ failed to provide adequate reasons for discrediting her complaints. The Commissioner contends that the ALJ's decision was based on substantial evidence in the record as a whole.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, she clearly was aware of the governing standards for evaluating subjective complaints because she cited the applicable regulations and Social Security Rulings ("SSR") 96-4 and 96-7p. R. 15-16. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002)(per curiam)(ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied").

Plaintiff argues that she has had chronic back pain since her accident on December 1, 2004 (R. 166, 172), consistent with her inability engage in substantial gainful activity. Plaintiff contends that her back impairment can reasonably be expected to cause the level of pain and restrictions that she testified to: she can only sit for 30 minutes, stand for 20 minutes, walk for 15 minutes, and

lift 10 pounds because of the pain from her impairment (R. 46-47), which precludes her from even sedentary work.

Plaintiff argues that she met the pain standard with sufficient evidence of the underlying medical condition of a back impairment. She points to a variety of treatment records, MRIs, and x-rays. An MRI performed in September 2006 showed focal midline posterior subligamentous disk herniation at L5-S1, neural encroachment at L4-5 and L5-S1 with mild bilateral stenosis, and mild to moderate disk bulging at L2-3, positive straight leg testing in 2006 and 2007 treatment notes, x-rays showing mild degenerative changes at L5-S1, and a diagnosis of chronic low back pain secondary to lumbar strain syndrome. R. 332, 346-47, 353, 388-89. Evidence from pre-2006 also noted musculoskeletal swelling, tenderness, and decreased range of motion as well as neurological symptoms and back spasms, for a time in late 2004-early 2005. R. 397-406.

There is no dispute that "the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms," as the ALJ explicitly found. R. 16. Plaintiff extrapolates this preliminary finding by the ALJ to be conclusive on the issue of her credibility. That is clearly not the case, since the ALJ continued the analysis to find that Plaintiff's subjective complaints concerning the intensity, persistence, and limiting effects of the symptoms were not credible. R. 16. In that respect, immediately after discussing Plaintiff's RFC, the ALJ stated:

> In terms of the claimant's alleged back pain, the Administrative Law Judge notes that the claimant has sought very little treatment for her back since her workers' compensation claims was settled and that she currently takes no medication (Exhibit 16F, p. 3). The records from Dr. Gilmer at the Jesus Clinic document that she has been provided with medication in response to subjective complaints and treated for acute conditions such as finger infections and plantar fasciitis.
>
> In addition to the lack of medical treatment evidence, the [ALJ] notes that back pain has not prevented the claimant from engaging in ordinary activities of daily living. Also, the claimant told Dr. Gilmer that she wanted to begin an exercise program. The claimant's testimony of re-injuring her back in April is not corroborated by reports to any treating source, and contrary to her testimony of sleeping problems, the claimant told Dr. Gilmer that she had been sleeping "good."

> The claimant's testimony that no one will hire her was not given any weight as the ability or inability to procure employment is not a factor that is germane to the issue of disability under the Social Security Act. Rather, the inquiry is whether it is possible for the individual to perform work. After considering the claimant's testimony and her reasons for not working, the Administrative Law Judge finds that her alleged limitations are credible only to the extent that she has been restricted to light work . . .
>
> Dr. Hatch's treatment records document that he initially advised the claimant that she could return to work with no lifting over 25-30 pounds. By September 26, 2005, however, Dr. Hatch reported that there were no contraindications to full work duty, and her released the claimant to full work duty. Dr. Hatch's only recommendations were a lumbosacral corset to be used as needed, and physical therapy for lower back range of motion exercises. . . .
>
> [A] review of the entire record reveals [Dr. Hatch's] conclusions are supported by the lack of clinical abnormalities, including negative straight-leg-raising, lack of true spasm, flexible lumbar/hip motion, extension and flexion, and a "smooth and efficient gait pattern."
>
> Dr. Carpenter's examination report also lacks clinical correlation. The claimant specifically denied lower extremity radicular pain, and although her lumbosacral spine examination revealed generalized point tenderness throughout, she had no paravertebral muscle spasms, no pain to palpation of the back musculature, and negative straight leg raising, bilaterally. Examination of her lower extremities revealed no motor or sensory deficits, and the claimant ambulated in normal heel to toe fashion. Dr. Carpenter observed that the claimant's gait was steady without assistance, her balance was good, and she did not ambulate with a limp. Dr. Carpenter's examination also failed to reveal any upper extremity limitations. The claimant had no motor or sensory deficits and no joint deformities. her grip strength was 5/5 bilaterally, and her fine manipulation skills are within normal limits at both upper extremities. Dr. Carpenter observed that the claimant had no difficulty with getting on and off the exam table, manipulating buttons, opening doors or writing with a pen.
>
> Dr. Newfield's treatment records also lack clinical correlation as he reported that the claimant "does not have significant radicular symptoms."
>
> In sum, the above [RFC] assessment is supported by the opinion of the State agency medical consultant, and by the lack of any treating source opinion evidence with establishes that the claimant has been unable to work, or has been limited in her ability to work for any consecutive twelve month period since December 1, 2004. The examining sources of record failed to identify any significant symptoms or limitations that would prevent the claimant from performing light work.

R. 17-18.

When an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff contends that the ALJ erred in finding that Plaintiff had sought very little treatment for her back since her workers compensation claim was settled. Plaintiff argues that the ALJ's finding was not based on substantial evidence because she saw doctors "at least eight times in 2004 (R. 396-412), eight times in 2005 (R. 308-26), seven times in 2006 (R. 330, 346, 349-54, 383 and 385), twice in 2007 (R. 387 and 393), and at least three times in the first five months of 2008 (R. 390, 413 and 414)." Doc. No. 13 at 10. As an initial matter, Plaintiff's workers compensation claim was settled in October 2005[3] (R. 37, 152-61), so the ALJ was referring to treatment received *after* that time, and doctor visits before October 2005 are thus not relevant to the ALJ's analysis as to the lack of treatment or the finding concerning Plaintiff's credibility.

Rather than focus on an arbitrary number of visits to doctors, the Court looks at the frequency and duration of the medical care sought by Plaintiff as an indication of the severity of her pain. Following the settlement of her workers compensation case, Plaintiff re-injured her back on September 11, 2006 while "moving trash." R. 95, 385. As a result, Plaintiff saw her primary care doctor at the Jesus Clinic twice (R. 383, 385); vocational rehabilitation paid for her to see an orthopedist, Dr. Newfield, three times in the September-October 2006 time frame for treatment. R. 349-54. Dr. Newfield recommended physical therapy and a TENS unit; Plaintiff reported that these

---

[3] Plaintiff saw Dr. Hatch (from August 2005 to October 2005) as part of her workers compensation case. *See* R. 308-326 (showing claim number listed on workers compensation documents in R. 152-160).

were "not helpful." R. 349, 383. She apparently sought no further treatment for her back after October 2006 (until one visit to Dr. Tweed in March 2007).

The Court notes that Plaintiff has also erroneously included in the list of dates of 2006 visits "to doctors" the consultative examination by Dr. Carpenter (R. 330), which was requested by the SSA, and the MRI report itself (R. 346); neither of which involved "treatment" of Plaintiff per se.

Plaintiff also cites a consultation with Dr. Tweed in March 2007 at the request of Dr. Newfield, in which Dr. Tweed determined she was not a good candidate for surgery because she had no leg pain, and a repeat sitting, upright MRI, as well as pain management, was recommended. R. 389. There are no records indicating this recommendation was followed or any further treatment for her back was sought.

The other four doctor visits that Plaintiff cites from 2007 and 2008 are not for treatment of Plaintiff's back pain at all; they are visits to her primary care doctor for an upper respiratory infection (R. 393), infection in her fingernails, (R. 390, 413, 414), and heel pain (R. 413, 414). In addition, as the Commissioner notes, Plaintiff indicated in March of 2007, that she wanted to begin an exercise program for weight reduction and general health (R. 395), which is inconsistent with a disabling level of pain. The ALJ's finding regarding lack of treatment is supported by substantial evidence.

Plaintiff next argues that the ALJ erred in discounting her testimony based on her activities of daily living. She points to her statements that she cannot vacuum, lift the laundry basket, cook much and only makes sandwiches and prepared foods, cannot shop for long and must lean on the cart, she rides her bicycle for only 20 to 30 minutes, and cannot walk for exercise because of the pain. R. 49, 223, 242, 248, 424. She stated in an SSA form that she cannot shop or take care of her grandchildren without family assistance. R. 424. Plaintiff contends that her statements do not support a finding that she can perform daily activities eight hours a day, five days a week.

As the Commissioner points out, Plaintiff testified that she is able to make a bed, go grocery shopping with some assistance from her husband, and that she sometimes rides her bike around her neighborhood. R. 48-49, 52-53. Plaintiff also testified that she cooks the evening meal and takes her young grandchildren to daycare in the morning. R. 53-54. She re-injured her back in 2006 "moving trash" and a second time while cleaning carpets. R. 48. On an SSA function report completed in 2006, Plaintiff described daily activities that consisted of a full day of housework and childcare as follows: "get dressed, feed and change grandbabies all day, wash baby bottles, sit outside while children play, make bed, pick up toys, fix lunch, wash, dry, fold laundry, watch Sesame Street, ride exercise bike, cook dinner sometimes, watch tv, listen to music, read Bible, go shopping [and] church once a week." R. 246.

In this case, the ALJ stated in great detail her reasons for discounting Plaintiff's credibility, including inconsistencies between her reports and the examination findings, as well as inconsistencies between her statements and her activities of daily living. These are factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929. In addition, as the ALJ noted, Plaintiff's subjective complaints were inconsistent with the treatment records of orthopedist Dr. Hatch (R. 308-29), who released Plaintiff initially with a restriction of no lifting over twenty-five to thirty pounds (R. 312, 321), but eventually by September 2005, to full duty work. R. 308-09, 317. The ALJ also found that Plaintiff's subjective complaints were inconsistent Dr. Carpenter's July 14, 2006, consultative examination. R. 330-32.

In addition, as the ALJ discussed, Plaintiff testified that she has worked for a short time in customer service at Big Lots; helping her husband with running a lawn business by mowing; delivering magazines by car to local grocery stores; Sam's club for a month as a demonstrator; the cosmetic department at Walmart; and as a companion at a senior care center. R. 34-37, 199-205. The ALJ found this work activity was not disqualifying substantial gainful activity, but demonstrated an

ability to function that was inconsistent with Plaintiff's testimony concerning her limitations. Accordingly, the ALJ's reasons for discrediting Plaintiff's credibility are supported by substantial evidence.

### C. Remand for benefits

Plaintiff seeks a reversal and a remand for benefits, based on the grounds asserted above. The standard warranting a remand for an award of benefits is appropriate where the Commissioner "has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).

Because the Court finds that the Commissioner's decision should be affirmed, it is unnecessary to address the type of reversal (with remand or benefits) that is appropriate.

## *IV. CONCLUSION*

The ALJ appropriately considered Plaintiff's circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court respectfully **RECOMMENDS** that the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) and the Clerk of the Court be directed to enter judgment and, thereafter, close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on April , 2010.

                        *David A. Baker*
                        DAVID A. BAKER
                        UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy